**John J. BURKE, Jr., Defendant,
Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 5792.**

United States Court of Appeals
First Circuit.

Aug. 10, 1961.

Solomon Sandler, Gloucester, Mass., for appellant.

Harold Lavien, Asst. U. S. Atty., Boston, Mass., with whom Elliot L. Richardson, U. S. Atty., and Thomas P. O'Connor, Asst. U. S. Atty., Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

Defendant-appellant, John J. Burke, Jr., was found guilty by a jury on four counts of an indictment charging him with willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him to the United States of America by filing false and fraudulent income tax returns.[1] The district court entered judgment on December 16, 1960 and imposed a fine of $2,500 and imprisonment for a period of four months on each count, said prison sentences and fines imposed on all counts to run concurrently.

Defendant makes three contentions of error in this appeal: (1) the district court erred in denying defendant's motion for acquittal at the close of the evidence; (2) the district court erred in denying defendant's motion for issuance at government expense of a subpoena for Thomas Scanlon; (3) the district court

---

1. Counts One to Four alleged willful evasion of taxes owing for the calendar years 1952–1955 respectively. The statutes alleged to be violated were I.R.C.1939 § 145(b), 26 U.S.C. § 145(b) (1952) as to Counts One and Two, and I.R.C.1954 § 7201, 26 U.S.C. § 7201 (1958) as to Counts Three and Four.

erred in permitting the trial to proceed when the evidence indicated that the Internal Revenue Service had taken the defendant's many records without service of a subpoena on him and without giving him a receipt for the records taken.

The case was tried on a specific items theory and only a short résumé of the voluminous evidence in a trial consuming thirteen days is required to indicate that there is no merit in defendant's first contention of error.

In 1952 defendant was the sole proprietor of Curley Esso Station, and of an oil transportation business, Burke Oil Transport, a partner with William J. Brady in the operation of the Hesperus Diner; a substantial stockholder in Sherman B. Ruth, Inc., a ship chandlery; B & B Trawling, Inc., owner and operator of fishing boats; Cape Ann Machine Co., Inc., a repairer of boats, and owner or part owner of various fishing boats.

His income tax return for 1952 showed salary from Sherman B. Ruth, Inc., a profit from Curley Esso Station and a loss on the Hesperus Diner, resulting in no tax due. The Government put in evidence of fifty-one checks of $50 each received from Sherman B. Ruth, Inc. as commissions, fifty-two checks of $50 each received from Cape Ann Machine Co., Inc. as commissions; fifty-two checks of $100 each received from B & B Trawling, Inc. as salary, a net profit of $2,632.87 from the operation of Burke Oil Transport, and a reportable long term capital gain from the sale of the oil transport tractor-trailer of $1,658.13 as well as $3,500 received from Sherman B. Ruth in the form of overpayments for groceries and meats. All of the above mentioned checks were either cashed or deposited to defendant's personal account.

Defendant's 1953 income tax return contained the same sources of income as his 1952 return and showed no tax due the United States. The Government presented evidence of seventeen checks of $50 each received by the defendant from Sherman B. Ruth, Inc. as commissions, and seventeen other checks of $50 each

from Cape Ann Machine Co., Inc. as commissions, and eighteen checks of $100 each received from B & B Trawling Inc. as salary, bond interest of $172.01, fifty-one checks of $40 each made out to Eunice Burke, defendant's wife, and ultimately charged to Sherman B. Ruth, Inc., although she did no work for any of the companies, various payments made by Sherman B. Ruth, Inc. to defendant totalling $3,764.69, and other payments by Sherman B. Ruth, Inc. to creditors of defendant for personal expense, $2,166.07.

In his 1954 return, defendant reported income from the same sources as before plus salary from the City of Gloucester of $1,500. The return indicated that no tax was due the United States. The Government introduced evidence of payments by Sherman B. Ruth, Inc. of $5,074.18, consisting of three items: (1) direct payments to defendant, (2) support for defendant's wife and (3) payments to defendant's creditors.

In defendant's 1955 income tax return he reported the City of Gloucester salary of $1,500 and $2,892.50 from a source, "Dickern Marine Supply, Transportation of Oil," resulting in a tax of $188.00. The Government introduced evidence of ten checks of $65 each received from Sherman B. Ruth, Inc. as salary, nine payments of $40 each to Eunice Burke, an unreported profit of $2,893.89 from the operation of the oil transportation business, based on computations since no records were kept by defendant.

The defendant, a member of the Massachusetts bar, represented himself at the trial and testified in his own behalf. His testimony and that of several other witnesses tended to show that the defendant had put various amounts of money into the several enterprises during 1952–1954, both monies supposedly paid to him, and his own savings, but neither the defendant nor the other witnesses were able to show entries in the books or check books to support these assertions. Defendant also maintained that, even assuming the correctness of the Government's evidence of income received by him, he had sufficient allow-

able deductions to reduce his total tax due to an insignificant amount. However, in rebuttal the Government showed that various tax and interest payments claimed by defendant had been made, according to the books or checks, by the corporations. In the reconstruction of tax due for the 1952 and 1953 tax years, however, deductions for interest and tax payments shown by the evidence to be paid by defendant were allowed. In each of the four years a substantial tax was shown by the Government's evidence to be due and owing to the United States by the defendant.

On the element of willfulness, the Government introduced evidence that in 1950 and 1951 defendant's tax returns had given as sources of income the meat transactions and oil transportation profits, as well as the Sherman B. Ruth, Inc. and Cape Ann Machine Co., Inc. commission payments and B & B Trawling Inc. salary. Defendant had deficiency assessments made against him for the years 1947 and 1948 based on his failure to report receipts from the oil transportation business and the meat transactions. Defendant is a lawyer, although no longer practicing. In addition, he had employed an accountant to aid him in regard to the 1947–1948 asserted deficiencies and a complete bookkeeping system for defendant and his business interests had been set up.

■ The evidence summarized is certainly sufficient to warrant the submission of each of the counts to the jury. The district court was clearly correct in denying defendant's motion for acquittal.

■ There is no merit in defendant's contention that the district court committed prejudicial error in refusing to subpoena Thomas Scanlon at Government expense, since in the oral argument before us defendant's counsel admitted that defendant had borrowed $200 from his sister to advance for costs and witness fees and had made his choice of witnesses. If Scanlon's testimony were as important to his defense as defendant now says, he should have chosen to subpoena him in preference to several witnesses who did little to aid his cause, if, indeed, such a choice was necessary.

■ Defendant's third contention is that the district court should not have permitted the trial to proceed since the evidence indicated that the Internal Revenue Service had taken his records without serving a subpoena on him and without giving him a receipt. He complains particularly because the Government states that it does not have the records Lee and Hilda Garston, and he could not get these records for use in his defense. The record reveals adequate evidence to justify a conclusion by the district court that the records obtained by the Internal Revenue Service were in the possession of the assignee for the benefit of creditors and that no improper procedures were used by the Internal Revenue Service in taking the records. Indeed, the issue was never before the district court in the form now presented. Defendant sought the production of documents and records in the Government's possession and this was granted. Defendant further complained of the lack of the Florence and Lee, Inc. and Hilda Garston, Inc. records, but apparently never ascertained whether these records were still in the possession of the person who took over the enterprises as assignee. Defendant has not shown us that his rights were denied by the district court's permitting the trial to proceed.

We have carefully examined the entire record. We believe that the district judge should be commended for his patience and tact in the conduct of this trial. Indeed, the defendant concedes that he received fair treatment from the court and stated that the charge "was very fair." Defendant was allowed a very broad scope in the presentation of his defense and received a full and fair trial.

Judgment will be entered affirming the judgment of the district court.